# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-1566
_____

Lupe Development Partners, LLC; Steven Minn

*Plaintiffs - Appellants*

v.

Penny Baird

*Third Party Defendant - Appellee*

Dessins, LLC

*Third Party Defendant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 17, 2025
Filed: May 7, 2026

_____

Before LOKEN, SMITH, and KOBES, Circuit Judges.

_____

SMITH, Circuit Judge.

Plaintiffs Lupe Development Partners, LLC and Steven Minn (collectively, "Plaintiffs") sought to enforce judgments that they have against defendant Fred Deutsch, the husband of third-party defendant Penny Baird. This case involves the

unusual scenario of a judgment creditor seeking to depose its former legal counsel. Plaintiffs moved for leave to depose the Scher Law Firm, LLP (Scher), as part of their ongoing efforts to enforce the judgments against Deutsch. The proposed deposition focused on Scher's prior lawsuit against Baird and her children for allegedly receiving fraudulent conveyances from Deutsch. Plaintiffs' motion for leave to depose Scher followed a prior order of the district court[1] in which it "cautioned" Plaintiffs "that no further discovery into Baird's finances will be permitted absent new evidence of fraudulent or voidable transactions." R. Doc. 59, at 19. The district court denied Plaintiffs' motion for leave to depose Scher and held Plaintiffs jointly and severally liable for Baird's costs and fees in responding to Plaintiffs' motion. Plaintiffs appeal, arguing that the district court abused its discretion in (1) denying their motion for leave to depose Scher and (2) imposing a sanctions award against them. We affirm.

## I. *Background*

This case arises from "nearly two decades of litigation history" and requires substantial summarization of that history. R. Doc. 78, at 1. In 2007, Plaintiffs sued Deutsch and his development companies in Minnesota state court, alleging contract breaches in a real estate development project. The Minnesota state court dismissed Baird as a defendant in that lawsuit after she established that she had not signed a guaranty. In 2010, the Minnesota state court entered two judgments for Plaintiffs against Deutsch and his companies totaling over $1.9 million (2010 Judgments).

In 2009, Scher, in its representative capacity for Plaintiffs and other claimants, sued Baird and her children in New York state court "for accepting over $1,000,000 in fraudulent transfers from Deutsch and/or his business" (2009 Lawsuit). R. Doc. 68, at 2. The complaint alleged that "Deutsch fraudulently transferred over $20,000,000, which were the proceeds of the sale of the Park Lex office building, to a shell entity solely owned by Deutsch." *Id.* It further alleged that "Deutsch used a

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

portion of those fraudulently-received funds [through the shell entity] to purchase extravagant 'gifts' for his family." *Id.* at 3. Specifically, the complaint "alleged that Baird accepted over a million dollars in fraudulent conveyances from Deutsch and/or his business, as a 'gift' for the purchase of a Paris apartment." *Id.* It also alleged that Baird "received an opulent diamond ring valued in excess of $100,000 from the same funds" and that her children "received diamonds valued in excess of $50,000 each, from the fraudulently transferred funds." *Id.* "The 2009 Lawsuit concluded with a settlement agreement." R. Doc. 78, at 2 (citing R. Doc. 41-1).

Plaintiffs also retained Scher to conduct post-judgment discovery against Deutsch in New York state court. Scher's goal was to uncover fraudulent conveyances made from Deutsch to Baird and their children. In 2012, Plaintiffs, through Scher, subpoenaed Baird, "seeking her bank statements and tax returns, documents relating to a mortgage payment on a Paris apartment, and information about three diamonds and a diamond ring." R. Doc. 59, at 2. They additionally subpoenaed TD Bank and JP Morgan Chase for "information about Baird's personal and business accounts." *Id.* Baird moved to quash the subpoenas. In 2013, the New York Supreme Court granted her motion, "finding that Plaintiffs 'failed to establish that the subpoenas seek information relevant to the identification of assets of the judgment debtor that could be used to satisfy their claim.'" *Id.* (quoting R. Doc. 41-1, at 248–49). Plaintiffs appealed, but the Appellate Division of the New York Supreme Court affirmed. It held "that the information Plaintiffs sought from Baird was 'utterly irrelevant to any proper inquiry.'" *Id.* (quoting R. Doc. 41-1, at 252–53). The New York Court of Appeals subsequently denied Plaintiffs' application seeking leave to appeal.

In 2015, Plaintiffs again retained Scher and filed suit in the New York Supreme Court against Baird and her children for fraudulent conveyances involving the Paris apartment, the three diamonds, and the diamond ring (2015 Lawsuit). The suit was stayed after Plaintiffs and another creditor filed an involuntary bankruptcy petition against Deutsch. Thereafter, the New York Supreme Court directed the parties to appear for a status conference, but the bankruptcy trustee and Plaintiffs

failed to appear. As a result, the court dismissed the fraudulent conveyances suit with prejudice.

In the bankruptcy action, Plaintiffs retained Cozen O'Connor, P.C. (Cozen) to file an adversary complaint against Deutsch, requesting that the bankruptcy court declare nondischargeable the debts that Deutsch owed to Plaintiffs. In 2017, the bankruptcy court held "that the award was nondischargeable and Deutsch would remain liable to Plaintiffs for the damages awarded by the Minnesota court." *Id.* at 3 (citing *In re Deutsch*, 575 B.R. 50 (Bankr. S.D.N.Y. 2017)).

Plaintiffs "then turned [their] efforts to pursuing Baird, or at least to pursuing discovery from or about Baird's finances, through [the] chapter 7 case." R. Doc. 41-1, at 4. In 2018, Cozen "appeared as special counsel" to the bankruptcy trustee. *Id.* In 2019, Cozen, on the bankruptcy trustee's behalf, subpoenaed Baird for "financial information, documents, and records regarding any bank accounts owned by Baird or her business between 2012 and 2019" and "information regarding the sale of the Paris apartment and a list of all safe deposit boxes she maintained." R. Doc. 59, at 3. Baird moved to quash the subpoena. The bankruptcy court denied Baird's motion and "permitted the trustee to conduct limited discovery and depose Baird." *Id.* "But the [c]ourt made clear, while permitting the discovery against Baird, that 'this has got to end.'" R. Doc. 41-1, at 5. The discovery "produced nearly 6,000 pages of documents, including financial records and financial aid applications filed with her children's schools." R. Doc. 59, at 3.

In 2021, Cozen, on the bankruptcy trustee's behalf, issued 11 subpoenas seeking "documents and information from 2006 through 2019 related to Baird's finances and those of her company, Dessins, LLC" and "information about her children's bank accounts and tuition payments made to schools they attended." *Id.* at 4. Baird moved to quash the subpoenas. This time, the bankruptcy court granted the motion. It explained, "While efforts by the judgment creditors to recover their claims are proper, their efforts to recover from Baird have 'crossed the line.'" R. Doc. 41-1, at 3. The bankruptcy court observed that counsel had not "uncover[ed]

any evidence of avoidable transfers to, or improper conduct by, Baird." *Id.* According to the court, counsel was pursuing "'follow up questions,' nearly two years *after* Baird's deposition . . . without any new evidence or specific allegations of wrongdoing or avoidable transactions." *Id.* at 5–6. The court deemed counsel's conduct "to be totally unjustifiable harassment of Baird" and stated that "[i]t ends now." *Id.* at 6. It quashed the subpoenas in their entirety. Subsequently, the bankruptcy court entered a discharge in the bankruptcy case. But because the court had determined that the Minnesota state court's damages award was nondischargeable, Deutsch remained liable for Plaintiffs' judgments.

In December 2021, Cozen filed on Plaintiffs' behalf a complaint in federal district court seeking recognition and enforcement of the 2010 judgments against Deutsch and his companies. The district court granted Plaintiffs' motion for default judgment in May 2022, and the case was closed.

But in April 2023, Plaintiffs served several subpoenas in the district court case "as part of their effort to locate [Deutsch's] assets and collect on [the] judgment[s] they were awarded against him in 2010." R. Doc. 59, at 1. These subpoenas sought from Baird and others "largely the same information from the same entities as the subpoenas quashed by the New York Supreme Court in 2012 and the Bankruptcy Court in 2021." *Id.* at 5. Plaintiffs sought "information from the entire period from 2006 to 2023." *Id.* at 18. Baird moved to quash 14 of the subpoenas. The magistrate judge quashed ten and "significantly limited the scope of the remaining four for information on Baird's finances and the finances of her company." (2023 Order). R. Doc. 78, at 2 (citing R. Doc. 59). Importantly, the district court warned Plaintiffs' counsel:

> Plaintiffs are cautioned . . . that no further discovery into Baird's finances will be permitted absent new evidence of fraudulent or voidable transactions. They have subjected Baird to multiple lawsuits and third-party subpoenas over the last thirteen years, and in that time, they have uncovered scant evidence of any suspicious activity.

[R. Doc. 59, at] 19. The purpose of the warning was to put a stop to the endless pursuit of Baird.

*Id.* (ellipsis in original).

In June 2024, Plaintiffs filed a "Motion for Leave to Conduct Deposition of the Scher Law Firm, LLP" as part of their continued effort to enforce the 2010 judgments. The motion was filed pursuant to Federal Rules of Civil Procedure 69 and 30. "Plaintiffs assert[ed] that a deposition of the Scher firm . . . [would] provide . . . new evidence" "of fraudulent or voidable transactions." R. Doc. 68, at 2 (quoting R. Doc. 59, at 19). Plaintiffs' proposed deposition focused on the 2009 Lawsuit. Plaintiffs informed the court of their belief that

> the Scher firm has information relevant to their investigations into the transfers described in the [2009] action, information related to their financial investigation and tracing of the remaining approximately $19,000,000 in sale proceeds that has not been accounted for by Deutsch, as well as information relevant to other suspicious transactions they identified between Deutsch and/or his businesses that were uncovered in pursuit of those claims.

*Id.* at 3 (footnote omitted). Plaintiffs maintained that they did not receive this information "in the prior 2004 examinations of Deutsch and Baird, and [that] the Scher Firm is the sole source of this information." *Id.* According to Plaintiffs, "this information [was] key to demonstrating to [the district court] that there are, and have been, suspicious transactions between Deutsch and Baird that require further investigation." *Id.*

A copy of the proposed subpoena to depose Scher was attached to the motion for leave. If issued, the subpoena would have required Scher to "bring . . . to the deposition the following documents. . . : See Attached Exhibit A." R. Doc. 68, at 8. In turn, "Exhibit A" provides:

REQUEST NO. 1: Produce copies of all documents, records, or electronic data, related to the action entitled *The Scher Law Firm, LLP v. Penny Baird*, *et. al.*, No. 23821/09 (N.Y.S.C. Kings County), including but not limited to communications, memoranda, or written materials related to the development and pursuit of claims against Penny Baird, Alexander Deutsch, Benjamin Deutsch, and Philip Deutsch.

REQUEST NO. 2: Produce copies of all documents, records, or electronic data, related to any action in which you were involved relating to the recovery of funds or assets in which it was alleged that there were fraudulent or voidable transactions between Fred Deutsch, including any business or entity in which he maintained an interest, on the one hand, and Penny Baird, including any business or entity in which she maintained an interest, or any of Fred Deutsch or Penny Baird's children, on the other.

R. Doc. 68, at 11 (bold and underline omitted). Baird opposed the motion, requesting that the court impose sanctions on Plaintiffs for seeking discovery "directly contrary to th[e] [c]ourt's prior order." R. Doc. 74, at 6.

The magistrate judge denied the motion for leave and imposed "limited sanctions in the form of Baird's costs and fees in responding to the motion." R. Doc. 82, at 2. The magistrate judge concluded that "subpoenas seeking information on Baird's transactions is discovery related to her finances." R. Doc. 78, at 3 (citing R. Doc. 59; R. Doc. 40). Specifically, Plaintiffs sought "discovery on the 2009 Lawsuit, which alleged Baird and her children accepted three fraudulent transfers from Deut[s]ch" and "discovery on 'any action' the Scher Firm was involved with that alleged 'fraudulent or voidable transactions' between Deut[s]ch and Baird or their children." *Id.* The magistrate judge concluded that the request to obtain this discovery failed for two primary reasons. "First, the discovery is, as defined in the prior [2023] [O]rder, discovery into Baird's finances." *Id.* at 4. The 2023 Order required Plaintiffs "to produce evidence of fraudulent or voidable activity before seeking further discovery of Baird's finances." *Id.* Notably, Plaintiffs conceded that they lacked any "new evidence of fraudulent or voidable transactions." *Id.* "Second,"

the magistrate judge noted that "Plaintiffs were almost certainly aware of this discovery for years, which raises a question about why they have not sought it sooner." *Id.* Plaintiffs' prior client relationship with Scher would likely have made them aware of the information that they sought. Plaintiffs "retained Scher Firm to represent them in [the 2015] suit against Baird" for fraudulent conveyances *after* "the Scher Firm [had] sued Baird seeking recovery based on the alleged conveyances [in the 2009 Lawsuit]." *Id.* at 5. The magistrate judge reasoned, "If Plaintiffs had a legitimate reason to seek discovery from the 2009 Lawsuit, they should have done so much earlier in the decade that has passed since filing the 2015 action." *Id.* The magistrate judge opined that Plaintiffs' "decision to do so now after so much time and expense and in light of the [c]ourt's prior order borders on harassment." *Id.*

The magistrate judge also imposed sanctions pursuant to its inherent authority. It concluded that Plaintiffs "willfully disobeyed the prior order," which "expressly required Plaintiffs to produce new evidence of fraudulent or voidable transactions to pursue further discovery of Baird's finances." *Id.* at 6. The magistrate judge found that Plaintiffs did not "submit[] new evidence under the good-faith belief it would warrant reopening discovery" but instead "admitted they lacked new evidence, and nonetheless pursued information on Baird's finances." *Id.* The magistrate judge noted "Plaintiffs' continual disregard for court warnings not to mistreat Baird" and deemed sanctions appropriate "as a penalty for failing to comply with a court order and a deterrent of further unwarranted discovery into Baird's finances." *Id.* The magistrate judge awarded Baird "her costs and fees in responding to Plaintiffs' motion." *Id.*

Plaintiffs objected to the magistrate judge's order, "contending that their motion proposing a subpoena to obtain information from a third party regarding Baird's finances does not violate the [c]ourt's [2023] Order" and that "the Scher Firm's deposition may potentially reveal [new] evidence of fraud." R. Doc. 82, at 2–3. The district court overruled the objections and affirmed the magistrate judge's decision. It found that Plaintiffs alleged no new evidence to justify additional discovery into Baird's finances in contravention of the prior order. It also rejected

Plaintiffs' argument that "they demonstrated a special effort to comply with the [c]ourt's [2023] Order" by "filing a motion seeking permission to subpoena the law firm." *Id.* at 3. The court explained that Plaintiffs' request that the court "deviate from its previous decision does not evince the vigilance that Plaintiffs claim to display." *Id.* Finally, the district court upheld the magistrate judge's imposition of limited sanctions as an admonishment for "Plaintiffs' unrelenting tactics to obtain information regarding Baird's finances." *Id.*

## II. *Discussion*

On appeal, Plaintiffs argue that the district court abused its discretion by (1) denying their motion for leave to depose Scher and (2) imposing sanctions in the form of attorneys' fees against them.[2]

---

[2]We are satisfied that we have appellate jurisdiction in this case. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir. 1992) ("The general rule . . . is that interlocutory orders are not appealable till the end of the case. The rule bars appeals from pretrial discovery orders, but what about postjudgment discovery orders? An order denying such discovery is appealable because no other route for obtaining appellate review of the order is available. Contempt is not an option; there is no way to disobey an order that merely denies your request for some relief." (citation modified)); *United States v. Campbell*, 73 F. App'x 382, 383 (10th Cir. 2003) (unpublished per curiam) ("[T]he denial of a post-judgment motion to compel discovery under Rule 69(a) has been held to be an immediately-appealable final order . . . ."); 10B Fed. Proc., L. Ed. § 26:896 ("A judgment creditor may appeal from the denial of postjudgment discovery in aid of execution; thus, an order denying a motion to compel answers to written interrogatories propounded under Fed. R. Civ. P. 69(a) and relating to the financial resources of judgment debtors may be an appealable final decision under 28 U.S.C.A. § 1291." (footnote omitted)); 2 Fed. Proc., L. Ed. § 3:195 ("Most postjudgment orders are final decisions and are appealable as long as the district court has completely disposed of the matter, since if such orders were not found final, there is little prospect that further proceedings would occur to make them final. A postjudgment order that addresses all the issues raised in the motion that sparked the postjudgment proceedings is treated as final and appealable." (footnotes omitted)).

A. *Motion for Leave to Depose Scher*

Plaintiffs assert that the district court abused its discretion by denying their motion for leave to depose Scher because the requested discovery did not violate the 2023 Order. Additionally, they maintain that the district court "independently abused its discretion in denying" their requested discovery because it was "within the broad scope of discovery allowed by Federal Rules of Civil Procedure 26(b)(1) and 69(a)(2)." Appellants' Br. 16.

We review for an abuse of discretion the district court's denial of Plaintiffs' motion for leave to depose Scher. *See Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998). "The right to conduct discovery applies both before and after judgment." *Id.* Under Federal Rule of Civil Procedure 69(a), "[i]n aid of the judgment or execution [of a money judgment], [a] judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in

---

Additionally, although neither party has discussed whether Baird, as a third-party defendant, has standing to challenge Plaintiffs' motion for leave to depose Scher, a nonparty, we conclude that she does.

> Rule 26(c) provides that "[a] *party* or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). The Rule also provides the [c]ourt with the authority to issue "for good cause . . . an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "*The explicit mention of 'a party' in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties.*" *Underwood v. Riverview of Ann Arbor*, No. 08–CV–11024, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008); *see also Fleet Bus. Credit Corp. v. Hill City Oil Co.*, No. 01–2417, 2002 WL 1483879, at *2 (W.D. Tenn. June 26, 2002) ("Many district courts have acknowledged [Rule 26(c)] allows a party to file a motion for protective order on behalf of a non-party.").

*Shukh v. Seagate Tech. LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013) (emphases added) (first and third alterations and ellipsis in original).

these rules or by the procedure of the state where the court is located." In turn, Federal Rule of Civil Procedure 26(b)(1) provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

However, a court is required to limit the "extent of discovery . . . if it determines" one of the following:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The district court's 2023 Order "cautioned" Plaintiffs that "no further discovery *into Baird's finances* will be permitted absent new evidence of fraudulent or voidable transactions." R. Doc. 59, at 19 (emphasis added). Plaintiffs chose not to appeal this order. The question, therefore, is whether Plaintiffs' proposed discovery was "into Baird's finances." If so, then the district court's denial of Plaintiffs' motion for leave to depose Scher would not constitute an abuse of its discretion.

-11-

In their "Memorandum of Law in Support of Plaintiff's Motion for Leave to Conduct Deposition of the Scher Law Firm, LLP," Plaintiffs sought discovery of the 2009 Lawsuit. That lawsuit alleged that Baird and her children accepted *three fraudulent transfers* from Deutsch. *See* R. Doc. 68, at 2 ("[T]he Scher Firm, in its representative capacity, sued Deutsch's wife, Baird, and her children, for accepting over $1,000,000 in fraudulent transfers from Deutsch and/or his business."). Plaintiffs expressly stated in their memorandum that they seek "information" related to Scher's "investigations into the *transfers* described" in the 2009 Lawsuit, as well as "information related to [its] *financial investigation* and tracing of the remaining approximately $19,000,000 in sale proceeds." *Id.* at 3 (emphases added). Plaintiffs sought discovery "relating to the recovery of funds or assets in which it was alleged that there were *fraudulent or voidable transactions* between Fred Deutsch . . . and *Penny Baird, including any business or entity in which she maintained an interest*, or any of Fred Deutsch or Penny Baird's children." *Id.* at 11 (emphases added).

Scher's financial investigation of alleged fraudulent transfers between Deutsch and Baird concerns "Baird's finances"—i.e., information about Baird's money. The 2023 Order prohibited *all* discovery of Baird's finances absent "new evidence of fraudulent or voidable transactions." R. Doc. 59, at 19. Plaintiffs conceded in their memorandum that they lacked "new evidence" and instead sought discovery to obtain such evidence. R. Doc. 68, at 2 ("Plaintiffs assert that a deposition of the Scher firm, for which Plaintiffs now request leave to conduct, will provide exactly that new evidence."). The 2023 Order prohibited discovery into Baird's finances absent new evidence. Plaintiffs presented no new evidence. The district court did not abuse its discretion by denying Plaintiffs' motion for leave to depose Scher in the absence of new evidence of fraudulent transactions.[3]

---

[3]Even if the 2023 Order did not prohibit the proposed discovery, the district court did not abuse its discretion in denying the motion under Rule 26(b)(2)(C). *See* R. Doc. 78, at 5 ("If Plaintiffs had a legitimate reason to seek discovery from the 2009 Lawsuit, they should have done so much earlier in the decade that has passed since filing the 2015 action. Their decision to do so now after so much time and expense and in light of the Court's prior order borders on harassment.").

## B. *Sanctions*

Plaintiffs also challenge that the district court's imposition of sanctions in the form of costs and attorneys' fees.

The district court relied on its inherent authority to impose costs and attorney's fees as a sanction. *See* R. Doc. 78, at 5. "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Schafly v. Eagle F.*, 970 F.3d 924, 936–37 (8th Cir. 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). "We review a court's imposition of sanctions under its inherent power for abuse of discretion." *Id.* at 936 (quoting *Chambers*, 501 U.S. at 55).

"'[U]ndoubtedly within a court's inherent power' is 'the less severe sanction of an assessment of attorney's fees.'" *Id.* at 937 (alteration in original) (quoting *Chambers*, 501 U.S. at 45). "The court has inherent power to assess attorneys' fees as a sanction for willful disobedience of a court order." *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998) (citing *Chambers*, 501 U.S. at 45). And "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Schlafly*, 970 F.3d at 937 (quoting *Chambers*, 501 U.S. at 45–46). "A remedial award of attorney's fees as a sanction occurs when the fee is paid to the opposing party as compensation for the attorney's fees incurred as a direct result of the unethical behavior." *Id.* (citation modified). "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers*, 501 U.S. at 50.

Plaintiffs argue that they did not violate the district court's prior order because they filed a motion seeking leave to conduct discovery "in an attempt to comply with the [d]istrict [c]ourt's [2023] Order." Appellants' Br. 17. They note that their motion for leave to conduct discovery

was filed before any discovery from the Scher Firm was actually undertaken precisely because of the issuance of the [d]istrict [c]ourt's [2023] Order limiting discovery into "Baird's finances." Indeed, exactly because [Plaintiffs] were mindful of the language contained in the [2023] Order, and to ensure compliance with the [2023] Order, [Plaintiffs] decided to seek leave to conduct the discovery before they actually issued any subpoena to the Scher Firm (despite [Plaintiffs]' belief that the information sought was allowable).

*Id.* at 19.

Baird counters that Plaintiffs' "motion violated the clear implication and intent of the December 2023 Order" because "[a]lthough . . . phrased in terms of what the district court would not permit . . . it clearly implied a prohibition on [Plaintiffs]: [Plaintiffs] must not pursue any further discovery into Baird's finances absent new evidence of fraudulent or voidable transactions." Appellee's Br. 19–20. Baird maintains that Plaintiffs' motion for leave "pursued further discovery into Baird's finances" and "forced Baird to respond to their motion, imposing on her one of the burdens that the December 2023 Order was intended to prevent." *Id.* at 20.

We hold that the district court did not abuse its discretion in imposing sanctions under its inherent authority. Plaintiffs asked for permission to do what the 2023 Order expressly prohibited them from doing—seeking discovery of Baird's finances in the absence of new evidence. The district court did not ignore "the nearly two decades of litigation history." R. Doc. 78, at 1. Plaintiffs showed "continual disregard for court warnings not to mistreat Baird." *Id.* at 6. The court concluded that Plaintiffs did not act in good faith in filing their motion for leave to subpoena Scher because they "admitted they lacked new evidence, and nonetheless pursued information on Baird's finances." *Id.* The court also noted Plaintiffs' disregard of "orders and admonitions" about Plaintiffs' treatment of Baird. *Id.* The court's imposition of sanctions was permissible given Plaintiffs' disobedience of the 2023 Order and the court's finding that sanctions would deter Plaintiffs from "further unwarranted discovery into Baird's finances." *Id.*

-14-

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____